THE HONORABLE JAMAL N WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEVEN J. NIKOLICH, both individually and upon behalf of the community property marital estate of STEVEN J. NIKOLICH and MARCIA A. NIKOLICH,<br><br>Plaintiffs,<br><br>v.<br><br>PROGRESSIVE CASUALTY INSURANCE COMPANY, an Ohio corporation; and, THE PROGRESSIVE COMPANY,[1] an Ohio corporation,<br><br>Defendants. | Case No.: 3:25-cv-05825-JNW<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>**NOTE ON MOTION CALENDAR: DECEMBER 12, 2025** |

**INTRODUCTION**

Disguised in Plaintiffs' 119-page Complaint, which consists mostly of long and confusing recitations of the elements of various RICO provisions, is a simple dispute: Plaintiffs allege that defendant Progressive Casualty improperly charged them insurance premiums for a vehicle after it was rendered "inoperable" by an accident and refused to

---

[1] According to their Complaint, Plaintiffs seek to sue Progressive Casualty Insurance Company and its parent corporation (Compl. ¶ 6) which Plaintiffs misidentify as "The Progressive Company." "The Progressive Company" does not exist—instead, The Progressive *Corporation* is Progressive Casualty Insurance Company's corporate parent. For purposes of this Motion, Defendants treat all references to the erroneously named "Progressive Company" as references to "The Progressive Corporation."

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO.: 3:25-CV-05825-JNW

1

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA  98104-4076
Telephone:  (206) 332-1380

1    issue a refund, despite the fact that Plaintiffs added the vehicle to the policy *after* that

2    accident, and then failed to remove it from the policy for over three years.

3        Based on that straightforward set of facts, Plaintiffs and their counsel are attempting

4    to weave a convoluted tale of a vast racketeering conspiracy between Progressive Casualty

5    and its parent company The Progressive Company—no doubt in an effort to take advantage

6    of the generous compensation scheme afforded to RICO plaintiffs.

7        This appears to be Plaintiffs' counsel's standard approach to otherwise

8    straightforward disputes—filing lengthy, inscrutable complaints alleging baseless RICO

9    claims, which courts in this District and elsewhere have repeatedly dismissed, often after

10   admonishing counsel for his tactics. *See, e.g.*, *Stephens v. Marino et. al.*, 2011 WL 4747920, at

11   *2–4 (W.D. Wash. Oct. 7, 2011) ("Many courts in this district and elsewhere have

12   consistently and repeatedly warned Webb that his litigation practices are improper and

13   problematic.") (collecting cases); *Cal. Coal. for Families & Children v. San Diego Cnty. Bar Ass'n*,

14   657 F. App'x 675, 677–78 (9th Cir. 2016) (affirming Rule 8 dismissal of RICO case where

15   complaint was "complicated, lengthy, and meandering"); *Rosales v. Mortg. Store Fin., Inc.*,

16   2009 WL 10672041, at *1–2 (S.D. Cal. June 16, 2009) (Rule 8 dismissal of RICO complaint

17   riddled with "unduly repetitious allegations [ ] steeped in conclusory language"); *Deperio v.*

18   *Downey Sav. & Loan Ass'n F.A.*, 2009 WL 10672415, at *3–5 (S.D. Cal. Oct. 2, 2009) (same;

19   "Plaintiffs' failure to comply with Rule 8 has impeded the expeditious resolution of the

20   present litigation, has burdened the court's docket and consumed scarce judicial resources in

21   addressing litigation that appears to have little chance at success based on the way counsel

22   chose to frame this as a RICO action."); *Kauhi v. Countrywide Home Loans, Inc.*, 2008 WL

23   5191343, at *1 (W.D. Wash. Dec. 10, 2008) (same); *Kochisarli v. Tenoso*, 2006 WL 721509,

24   at *6–9 (E.D.N.Y. Mar. 21, 2006) (Rule 8 dismissal and granting Rule 11 motion for

25   sanctions; "The utter inadequacy of the RICO claims alone would justify sanctions given

26   the stigma attached to RICO allegation."); *Presidio Grp., LLC v. Juniper Lakes Dev., LLC*, 2010

27

1  WL 2243358, at *4–7 (W.D. Wash. June 1, 2010) (Rule 8 and Rule 12 dismissal of RICO

2  case alleging wire fraud that was actually "a contract issue, not a fraud claim"); *Ochoa v.*

3  *Hous. Auth. of L.A.*, 47 F. App'x 484, 486–88 (9th Cir. 2002) (affirming Rule 12 dismissal

4  and Rule 11 sanctions); *Primage Corp. v. ShoreBank Pac.*, 2010 WL 2679899, at *1–4 (W.D.

5  Wash. July 2, 2010) (Rule 12 dismissal of RICO complaint "comprised of convoluted

6  legalese and conclusory language" that ultimately alleged "a contract problem, not a RICO

7  problem"); *Nygard v. Mortg. Elec. Registration Sys., Inc.*, 2015 WL 5730428, at *1–4 (W.D.

8  Wash. Sep. 30, 2015) (Rule 12 dismissal); *Timberline Nw. v. Hill*, 1998 WL 123119, at *1–3

9  (9th Cir. Mar. 17, 1998) (same); *Kauhi v. Countrywide Home Loans Inc.*, 2009 WL 3169150, at

10  *4–7 (W.D. Wash. Sep. 29, 2009) (same); *Chagby v. Target Corp.*, 358 F. App'x 805, 808 (9th

11  Cir. 2009) (same).

12      In fact, this is at least the *fourth* RICO complaint Mr. Webb has filed on behalf of

13  *these plaintiffs*, and all three prior complaints were similarly dismissed. *See Portfolio Invs. LLC*

14  *v. First Sav. Bank Nw.*, 583 F. App'x 814, 817 (9th Cir. 2014) (affirming dismissal of RICO

15  claims filed by Dean Browning Webb on behalf of Steven and Marcia Nikolich); *Nikolich v.*

16  *Bank of Am., N.A.*, 2016 WL 6395142, at *2 (W.D. Wash. Oct. 28, 2016) (dismissing RICO

17  claims filed by Dean Browning Webb on behalf of Danica Nikolich, daughter of Steven and

18  Marcia Nikolich); *NM LLC v. Keller*, 2024 WL 4336428, at *6 (W.D. Wash. Sep. 27, 2024)

19  (dismissing RICO claims filed by Dean Browning Webb on behalf of Steven and Marcia

20  Nikolich).

21      As discussed in more detail below, this latest attempt by Plaintiffs and their counsel

22  to secure a RICO windfall fails for many of the same reasons as their prior efforts.

23  Specifically, among other things, their claims fall outside the relevant statutes of limitations,

24  they fail to adequately plead a RICO enterprise, they fail to adequately plead fraud, and

25  they fail to adequately plead a RICO pattern. Thus, for the reasons below, the Court should

26  dismiss Plaintiffs' Complaint in its entirety and with prejudice.

27

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO.: 3:25-CV-05825-JNW

3

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA  98104-4076
Telephone:  (206) 332-1380

1

**STATEMENT OF FACTS**

2      On September 24, 2020, Plaintiffs' daughter, Danica Nikolich, was involved in an

3   accident while driving Plaintiffs' 2013 Ford Fusion, rendering that vehicle "inoperable and

4   unrepairable." Compl. ¶ 12.

5      Plaintiffs allege that, at some point "in 2020," they had contracted with Progressive

6   Casualty to obtain insurance "for a certain motor vehicle owned by plaintiffs"—presumably

7   referring to the 2013 Ford Fusion. Compl. ¶ 11. Plaintiffs admit that they "expressly

8   consented to and authorized Progressive Casualty to withdraw monies by electronic funds

9   transfer from plaintiffs' bank account" to pay the policy premiums. *Id.*

10      Following the September 24, 2020 accident, Plaintiffs submitted an insurance claim,

11   which Progressive Casualty denied. Compl. ¶¶ 13–14. Specifically, Progressive Casualty

12   denied the claim because, at the time of the accident, Danica Nikolich was not a listed

13   driver on the policy, and because the 2013 Ford Fusion was not a listed vehicle on the

14   policy. *See* Declaration of Daniel Kavouras ("Kavouras Decl."), Ex. A, February 17, 2022

15   Ltr. from Progressive Casualty to Danica Nikolich.[2]

16      After Plaintiffs added the 2013 Ford Fusion to the policy effective September 25,

17   2020, it remained on the policy and Plaintiffs continued to pay the associated monthly

18   premiums until they cancelled the policy in February 2024. Compl. ¶¶ 15, 18; *see also*

19   Kavouras Decl., Ex. B.

20      Several months after cancelling their policy, Plaintiffs—through counsel—sent a

21   demand to Progressive Casualty for a refund of the premiums paid for the 2013 Ford

22   Fusion. Compl. ¶ 18A. Plaintiffs' counsel alleges that he subsequently called Progressive

23

24   [2] Although Plaintiffs only allege they added "a certain motor vehicle" sometime "in 2020,"
     their policy documents show that they added the 2013 Ford Fusion relevant to this litigation
     to their policy on September 25, 2020—the day *after* the accident—and it remained on the

25   policy through multiple policy renewals through February 2024. *See* Kavouras Decl., Ex. B,
     Plaintiffs' Policy Records. *See Univ. Ins., LLC v. Allstate Ins. Co.*, 564 F. Supp. 3d 934, 938

26   (W.D. Wash. 2021) (on a motion to dismiss, the Court can consider a document not
     attached to the complaint if the complaint "refers extensively" to that document, or the

27   document "forms the basis of" a claim asserted in the complaint).

DEFENDANTS' MOTION TO DISMISS          4          BAKER & HOSTETLER LLP
PLAINTIFFS' COMPLAINT                             999 Third Avenue, Suite 3900
CASE NO.: 3:25-CV-05825-JNW                       Seattle, WA  98104-4076
                                                  Telephone:  (206) 332-1380

1  Casualty, and that a company representative stated during that call that Progressive

2  Casualty would issue the requested refund. Compl. ¶¶ 18AA–18AAA. Nevertheless,

3  Plaintiffs allege Progressive Casualty issued only a partial refund and Plaintiffs' subsequent

4  demands for a larger refund were rejected. Compl. ¶¶ 18B, 18E. This lawsuit followed.

**LAW AND ARGUMENT**

**I.     Plaintiffs' RICO Claims Are Barred By The Statute of Limitation.**

Plaintiffs' Complaint includes claims for violations of both federal RICO and

Washington's "little RICO" statute. *See generally* Compl. ¶¶ 28–148. The statute of

limitations for these RICO claims is four years and three years respectively, and the statute

begins to run "when a plaintiff knows or should know of the injury that underlies his cause

of action." *Best v. Combs*, 2025 WL 1674393, at *5 (C.D. Cal. June 3, 2025); *Khalid v.

Microsoft Corp.*, 2020 WL 6037123, at *11 (Wash. App. Oct. 12, 2020).

Here, Plaintiffs' claims are based on Progressive Casualty allegedly collecting

monthly premium payments for a totaled vehicle, beginning on September 11, 2020—more

than *five* years before Plaintiffs filed their Complaint. *See* Compl. ¶ 18.

The fact that those payments continued to be collected into the limitations periods

does not render Plaintiffs' claims timely. *See Best*, 2025 WL 1674393, at *7 (holding that

continued royalty payments do not bring plaintiff's RICO claims within the limitations

period because subsequent royalty payments made to Defendants are merely a

"reaffirmation of the predicate acts that took place outside the limitations periods").

Accordingly, both Plaintiffs' federal and state RICO claims fall outside the applicable

limitations periods, and should be dismissed with prejudice for that reason alone.

**II.    Plaintiffs' RICO Claims Fail.**

Even if Plaintiffs' RICO claims were timely, they would still fail because Plaintiffs'

Complaint fails to adequately allege several necessary elements of both their federal and

state RICO claims.

A.      **Plaintiffs did not adequately plead their federal RICO claims.**

1.      **Plaintiffs failed to plead the existence of a RICO enterprise.**

In Counts 1, 2, and 4 through 14 of their Complaint,[3] Plaintiffs allege that Progressive Casualty and its parent company Progressive violated Section 1962 of the Racketeer Influenced and Corrupt Organizations (RICO) Act. Compl. ¶¶ 28–127. But despite taking great pains to mechanically repeat the language of RICO, Plaintiffs have failed to plead the most fundamental element of a federal RICO claim—a racketeering enterprise.

To state a civil RICO claim, a plaintiff must allege "that one or more defendant 'persons' conducted or participated in the activities of an 'enterprise' through a pattern of racketeering activity." *Capitol West Appraisals v. Countrywide Fin. Corp.*, 2009 WL 10677052, at *2 (W.D. Wash. Sept. 30, 2009). In other words, the plaintiff must prove "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Here, Plaintiffs identify both defendant Progressive Casualty and its parent company defendant Progressive individually as "RICO persons" and together as an "association-in-fact enterprise." But these bare allegations are insufficient.

Although "[a] plaintiff may name all members of an associated-in-fact enterprise as individual RICO persons, [plaintiff] must establish that those individual members are 'separate and distinct' from the enterprise they collectively form." *Moran v. Bromma*, 675 F. App'x 641, 645 (9th Cir. 2017).

And courts have repeatedly held that "a parent and its subsidiary usually cannot constitute a RICO enterprise . . . because RICO liability 'depends on showing that the defendants conducted or participated in the conduct of 'the *enterprise's* affairs,' not just their *own* affairs.'" *Capitol West*, 2009 WL 10677052, at *6. To hold otherwise would mean that

---

[3] Plaintiffs' Complaint does not include a third count.

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA  98104-4076
Telephone:  (206) 332-1380

1   "every corporation that has subsidiaries and commits fraud is an enterprise for RICO

2   purposes."*Chagby v. Target Corp.*, 2009 WL 398972, at *1 n.2 (C.D. Cal. Feb. 11, 2009)

3   (dismissing RICO case filed by Mr. Webb for failure to plead a distinct enterprise because

4   Target and its subsidiaries "all operate under a unified corporate structure").

5          Here, Plaintiffs have not articulated any facts demonstrating that an enterprise

6   distinct from the Progressive corporate family exists to carry out unlawful activities, and

7   thus have failed to plead a necessary element of their RICO claims. *See Lee v. General*

8   *Nutrition Cos., Inc.*, 2001 WL 34032651, at *14 (C.D. Cal. Nov. 26, 2001) (dismissing RICO

9   claim because plaintiff failed to show an enterprise where "each of the persons pled operated

10  within a unified corporate structure and were guided by a single corporate consciousness");

11  *Moran*, 675 F. App'x at 645 (dismissing RICO claim where plaintiff failed to explain "how

12  The Entrust Group and Entrust Administration are separate and distinct from the alleged

13  enterprise, consisting only of members of the same corporate family"); *Chagby*, 358 F. App'x

14  at 808 (affirming dismissal where "alternative theory that an enterprise existed between

15  Target Corporation and its wholly-owned subsidiaries fails to meet the distinctiveness

16  requirement of civil RICO claims.").

17         Accordingly, the Court should dismiss Plaintiffs' federal RICO claims.

18         **2.     Plaintiffs failed to plead a pattern of racketeering activity.**

19         To state a RICO claim, a plaintiff must demonstrate that the defendant "(1)

20  participated in (2) an enterprise (3) through a pattern (4) of racketeering activity that (5)

21  proximately caused the claimant's harm." *Lang v. Strange*, 2022 WL 168698, at *8 (W.D.

22  Wash. Jan. 19, 2022). A "pattern of racketeering activity" requires "at least two acts of

23  racketeering activity," which the statute defines as a number of specific criminal acts under

24  federal law, including federal mail and wire fraud. *Mai Ngoc Bui v. Ton Phi Nguyen*, 712 F.

25  App'x 606, 608–09 (9th Cir. 2017). Where a RICO claim is based on mail or wire fraud, a

26  plaintiff's allegations "must comply with Federal Rule of Civil Procedure 9(b), which

27

DEFENDANTS' MOTION TO DISMISS                    7            BAKER & HOSTETLER LLP
PLAINTIFFS' COMPLAINT                                         999 Third Avenue, Suite 3900
CASE NO.: 3:25-CV-05825-JNW                                  Seattle, WA  98104-4076
                                                             Telephone:  (206) 332-1380

1     requires that circumstances constituting fraud be stated with particularity." *Woodell v.*

2     *Expedia Inc.*, 2019 WL 3287896, at \*4 (W.D. Wash. July 22, 2019). Mail and wire fraud

3     have three elements: "(A) the formation of a scheme to defraud, (B) the use of the mails or

4     wires in furtherance of that scheme, and (C) the specific intent to defraud." *Id.*

5           Here, Plaintiffs allege that Progressive Casualty engaged in a pattern of racketeering

6     activity—specifically federal mail and wire fraud—by collecting (via electronic funds

7     transfers) premium payments from Plaintiffs for a vehicle that was totaled in an accident.

8     But those allegations do not establish a pattern of racketeering activity sufficient to state a

9     RICO claim, for two reasons.

10          *First*, Plaintiffs have not met their burden to plead that *anything* related to Progressive

11    Casualty's collection of premiums amounted to mail or wire fraud. Indeed, Plaintiffs admit

12    that they added the 2013 Ford Fusion to their insurance policy, and authorized Progressive

13    Casualty to automatically withdraw monthly premiums from their account. Compl. ¶¶ 11–

14    13. The fact that Plaintiffs waited more than three years after the accident in question to

15    remove the allegedly "inoperable" vehicle from their policy is not evidence that they were

16    defrauded—it is evidence that they were negligent.

17          Indeed, although Plaintiffs characterize the collection of those payments as "felonius,

18    wrongful, criminal, and fraudulent" (Compl. ¶ 18), they offer no explanation for *why* that is

19    allegedly the case, let alone facts establishing that Progressive Casualty made a false or

20    misleading representation that they subsequently relied upon, or any other facts establishing

21    a scheme to defraud them. And courts have consistently held that such conclusory

22    allegations of fraud plainly fail to state a viable RICO claim. *See Capitol West*, 2009 WL

23    10677052, at \*3 (dismissing RICO claim based on mail and wire fraud where plaintiff's

24    allegations "d[id] not sufficiently explain *how* the Defendants' conduct was fraudulent, but

25    instead simply state[d] that it *is* fraudulent"); *Bredberg v. Middaugh*, 2020 WL 3896082, at \*3

26    (W.D. Wash. July 10, 2020) (dismissing RICO claim based on mail and wire fraud where

27

1    plaintiff's allegations "do not establish fraud in any way"  and "[w]hile Plaintiff contends

2    the Defendants falsified data, his allegations suggest professional disagreement, not fraud");

3    *United Food & Comm. Workers Central Penn. & Regional Health & Welfare Fund v. Amgen, Inc.*,

4    400 F. Appx. 255, 257 (9th Cir. 2010) ("The complaint did not identify statements or

5    representations made by Amgen that were literally false or misleading at the time they were

6    made, as required in a civil RICO action based on mail and wire fraud"); *Tufano v. State*

7    *Farm Mutual Auto. Ins. Co.*, 854 F. Appx. 134, 137 (9th Cir. 2021) ("The RICO claim is

8    predicated on Tufano's allegation that State Farm's advertising of its products as 'insurance'

9    constitutes mail fraud or wire fraud. Tufano has not plausibly alleged that State Farm's

10   advertising was misleading, so he has not shown that State Farm formed a scheme to

11   defraud him, as required to establish mail or wire fraud.").

12        Nor have Plaintiffs identified a single law, rule or policy that would make it unlawful

13   for Progressive Casualty to collect premiums for coverage on a vehicle that Plaintiffs added

14   to their insurance policy after an accident and did not subsequently remove, regardless of

15   that vehicle's condition. At most, Plaintiffs have identified a dispute over their rights under

16   an insurance agreement—but such a claim does not satisfy RICO. *See Nguyen v. Hartford Life*

17   *Ins. Co.*, 2009 WL 10673922, at *1–2 (C.D. Cal. June 2, 2009) (dismissing RICO claim

18   based on allegations that defendant insurance company improperly collected premiums for a

19   life insurance policy but refused to pay out following a death based on an incomplete

20   application because the claim amounted to "a simple breach of contract claim that is not a

21   predicate for a RICO claim"); *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d

22   1290, 1318–19 (11th Cir. 1998) ("Even if we were to assume that Telesat delayed paying

23   JEJ's invoices for an extortionate purpose, Telesat's conduct would not constitute a 'scheme

24   to defraud' proscribed by the mail and wire fraud statutes; thus, the acts of nonpayment

25   could not serve as acts of racketeering."); *Manos v. MTC Fin., Inc.*, 2018 WL 6220051, at *7

26   (C.D. Cal. Apr. 2, 2018) ("Plaintiffs' allegations, at most, indicate that Defendants charged

27

DEFENDANTS' MOTION TO DISMISS                    9          BAKER & HOSTETLER LLP
PLAINTIFFS' COMPLAINT                                       999 Third Avenue, Suite 3900
CASE NO.: 3:25-CV-05825-JNW                                Seattle, WA  98104-4076
                                                           Telephone:  (206) 332-1380

1    impermissible fees and failed to disclose that those fees were unauthorized. A plaintiff

2    cannot state a claim under the Civil RICO statute by simply artfully pleading what is

3    essentially a breach of contract claim."); *All Direct Travel Servs., Inc. v. Delta Air Lines, Inc.*,

4    120 F. Appx. 673, 675 (9th Cir. 2005) (affirming dismissal of RICO claim because

5    defendant had a legal right to collect payments under the parties' agreement and "the[]

6    issues concern[ing] the interpretation of the [parties'] Agreement amount to nothing more

7    than a contract dispute").

8          Without any evidence of fraudulent conduct, the Court should decline Plaintiffs'

9    invitation to "fit a square peg in a round hole by squeezing [this] garden-variety business

10   dispute[] into [a] civil RICO action[]." *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016,

11   1025 (7th Cir. 1992); *Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1108 (9th Cir. 2003)

12   ("Courts should therefore strive to flush out frivolous RICO allegations at an early stage of

13   the litigation."). That is especially true here, where Plaintiffs and their counsel have a

14   demonstrated history of seeking to twist the RICO statute to achieve a windfall. *Midwest*

15   *Grinding*, 976 F.2d at 1025 ("The widespread abuse of civil RICO stems from the fact that

16   all modern business transactions entail use of the mails or wires—giving plaintiffs a

17   jurisdictional hook—and the fact that RICO offers a far more generous compensation

18   scheme than typically available in state court.").

19         It is also worth noting that Plaintiffs do not allege a single use of the mail to carry out

20   any of the conduct at issue—instead, they generally allege in each RICO cause of action that

21   "defendants employed the federal mail and/or federal interstate wires, as well as engaged in

22   federal racketeering." *See, e.g.*, Compl. ¶¶ 38, 49, 55, 62, 68, 90, 101, 107, 114, 120. But this

23   bare recitation of a RICO element is insufficient to state a claim based on mail fraud. *See*

24   *Woodell*, 2019 WL 3287896, at *5 ("General allegations concerning the use of the mails is

25   insufficient."); *Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405

26

27

1    (9th Cir. 1991) (finding allegations regarding the use of the mails were too generalized to

2    satisfy Rule 9(b) where "no specific mailings are mentioned").

3         Thus, the Court should dismiss Plaintiffs' RICO claims for failure to identify any

4    instance of mail or wire fraud.

5         *Second*, even if Plaintiffs had adequately alleged a RICO predicate, they nevertheless

6    fail to allege facts sufficient to establish a *pattern* of racketeering activity—that is, at least two

7    RICO predicate acts.

8         As the Ninth Circuit has held, there is no pattern of racketeering activity if there is "a

9    single episode with a single purpose which happened to involve more than one act taken to

10   achieve that purpose." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992). Yet

11   that is exactly what Plaintiffs have alleged here—a single alleged scheme to continue

12   collecting insurance premiums on a totaled vehicle. The fact that it involved "more than one

13   act"—namely, multiple monthly payments—does not transform that single alleged scheme

14   into a "pattern" for RICO purposes.

15        Accordingly, for both of the reasons discussed above, Plaintiffs have failed to plead a

16   pattern of racketeering activity for purposes of their RICO claims, and those claims should

17   therefore be dismissed.

18            **3.    Plaintiffs failed to allege The Progressive Company participated in a
                      RICO enterprise or any alleged fraud.**
19

20        Plaintiffs' federal RICO claims fail for a third reason: nowhere in their 119-page

21   Complaint do Plaintiffs identify a single action taken by defendant The Progressive

22   Company, let alone one amounting to mail or wire fraud to support a RICO claim.

23        Again, Plaintiffs must plead the following four elements to establish a RICO claim:

24   that the defendant participated "in (1) the conduct of (2) an enterprise that affects interstate

25   commerce (3) through a pattern (4) of racketeering activity." *Bitton v. Gencor Nutrientes, Inc.*,

26   654 F. App'x. 358, 363 (9th Cir. 2016).

27

1    To that end, a plaintiff must provide "proof that each defendant conduct[ed] or

2 participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs." *Rabang v.*

3 *Kelly*, 2017 WL 1496415, at \*8 (W.D. Wash. Apr. 26, 2017); *see also Kennedy v. Full Tilt*

4 *Poker*, 2010 WL 1710006, at \*8 (C.D. Cal. Apr. 26, 2010) (conclusory allegation that a

5 defendant controlled the enterprise were insufficient to demonstrate conduct in a RICO—

6 "While [t]he continuity requirement does not, in itself, require that every member 'be

7 involved in each of the underlying acts of racketeering, or that the predicate acts be

8 interrelated in any way,' plaintiffs must allege sufficient facts to suggest ongoing

9 involvement in the enterprise by each of the defendants."); *SolarCity Corporation v. Pure Solar*

10 *Co.*, 2016 WL 11019989, at \*6 (C.D. Cal. Dec. 27, 2016) (dismissing RICO claim against

11 certain defendants for whom plaintiff provided only conclusory allegations that they

12 participated in the enterprise).

13    And to the extent Plaintiffs claim that the predicate acts of racketeering activity are

14 mail or wire fraud, the plaintiff "must plausibly allege a defendant's specific intent to

15 defraud." *Bitton*, 654 F. App'x at 363; *see also Capitol West*, 2009 WL 10677052, at \*4

16 (plaintiffs failed to plead RICO conduct because they did not "identify *false statements* made

17 by each and every defendant").

18    Plaintiffs' vague and conclusory allegations that Progressive "exercised control over"

19 or "consented to" the alleged actions of Progressive Casualty does not satisfy Plaintiffs'

20 burden to demonstrate Progressive's participation in an alleged enterprise or a specific intent

21 to defraud the Plaintiffs. Indeed, the only actual facts pled involve Progressive Casualty—

22 Plaintiffs simply lump the corporate parent's conduct in with its subsidiary by repeatedly

23 asserting that "defendants" engaged in "felonious, criminal and wrongful conduct" and

24 "racketeering activity." Compl. ¶¶ 19, 22, 23, 25, 34, 35, 49, 55, 62, 68, 81, 82, 107.

25    But plaintiffs may not "merely lump multiple defendants together"—rather, they

26 must "differentiate their allegations when suing more than one defendant and inform each

27

1    defendant separately of the allegations surrounding his alleged participation in the fraud."

2    *Nygard v. Mortg. Elec. Registration Sys., Inc.*, 2015 WL 5730428, at *3 (W.D. Wash. Sept. 30,

3    2015) (holding that plaintiff's allegations that First American "participated in efforts,

4    threats, and/or attempts to foreclose" on certain of plaintiff's properties was insufficient to

5    state a RICO claim because "[t]he complaint identifies no specific facts as to First

6    American's conduct or involvement"); *Woodell*, 2019 WL 3287896, at *6 (granting motion

7    to dismiss RICO claims against certain defendants where plaintiff failed to plead that they

8    engaged in any specific fraudulent conduct—reasoning that "[a]t a minimum, a plaintiff

9    must identify the role of each defendant in the alleged fraudulent scheme" and "lumping the

10   three remaining Defendants together with respect to the same conduct" is not sufficient);

11   *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) ("The complaint is shot through

12   with general allegations that the 'defendants' engaged in fraudulent conduct but attributes

13   specific misconduct only to KPMG and B & W. Conclusory allegations that Presidio and

14   DB 'knew'" about the fraud and "'were acting as agents [of KPMG and B & W]' . . .

15   without any stated factual basis are insufficient as a matter of law.").

16          Thus, without any specific allegations of conduct, let alone fraudulent conduct, by

17   The Progressive Company, Plaintiffs' RICO claims against it fail.

18          **B.      Plaintiffs did not adequately plead their Washington RICO claims.**

19          In their Fifteenth Claim for Relief, Plaintiffs allege that defendants violated sections

20   of the Washington Criminal Profiteering Act ("WCPA") which is "Washington's version of

21   the federal [RICO], and is known as a 'little RICO' statute." *Wren v. Whitehead*, 2025 WL

22   398883, at *25 (Wash. App. Feb. 4, 2025).  To that end, "courts may look to federal case

23   law for guidance when construing the WCPA." *Id.* at *26.

24          To state a WCPA claim, "plaintiffs' complaint must include allegations that

25   defendants' illegal scheme involved a pattern of three or more predicate acts carried out by

26

27

DEFENDANTS' MOTION TO DISMISS                    13            BAKER & HOSTETLER LLP
PLAINTIFFS' COMPLAINT                                          999 Third Avenue, Suite 3900
CASE NO.: 3:25-CV-05825-JNW                                    Seattle, WA  98104-4076
                                                              Telephone:  (206) 332-1380

1 three or more people." *Allstate Ins. Co. v. Lighthouse Law P.S. Inc.*, 2016 WL 4041198, at *4

2 (W.D. Wash. July 28, 2016).

3     As explained above, Plaintiffs have not identified any criminal activity perpetrated

4 by either of the two named defendants, let alone by three people. Similarly, Plaintiffs have

5 identified only a single allegedly wrongful act—collecting premium payments for a totaled

6 vehicle—and not three separate predicate acts as required under the WCPA. Thus,

7 Plaintiffs' WCPA claim fails.

8 **III.   Plaintiffs' Declaratory Judgment Claim Fails.**

9     Plaintiffs' Sixteenth and Seventeenth Claims for Relief seek a declaratory judgment

10 that defendants are liable for RICO violations pursuant to the Declaratory Judgment Act

11 and RICO. But as explained above, Plaintiffs have not stated a claim for RICO. Thus,

12 Plaintiffs' declaratory judgment claims must fail. *See City of Reno v. Netflix, Inc.*, 52 F.4th 874,

13 878 (9th Cir. 2022) ("The Declaratory Judgment Act does not provide a cause of action

14 when a party [ ] lacks a cause of action under a separate statute and seeks to use the Act to

15 obtain affirmative relief."); *Bennett v. United States*, 2024 WL 4005098, at *15 (S.D. Cal.

16 Aug. 5, 2024) (holding that "a claim for declaratory relief is not a stand-alone claim" and,

17 thus, plaintiff's claims for declaratory relief based on RICO violations "must be dismissed

18 because Plaintiffs' substantive claims for RICO violations have been dismissed").

19 **CONCLUSION**

20     For the foregoing reasons, each of Plaintiffs' claims for relief should be dismissed

21 with prejudice.

22

23

24

25

26

27

DEFENDANTS' MOTION TO DISMISS       14      BAKER & HOSTETLER LLP
PLAINTIFFS' COMPLAINT                  999 Third Avenue, Suite 3900
CASE NO.: 3:25-CV-05825-JNW            Seattle, WA  98104-4076
                                      Telephone:  (206) 332-1380

**CERTIFICATE OF CONFERRAL**

Pursuant to Section 5.6 of the Court's Chamber Procedures, I certify that counsel for Defendants attempted to confer with counsel for Plaintiffs multiple times regarding this Motion, but were unable to do so. Specifically, although the parties exchanged emails setting up phone calls on both Tuesday, November 12 and Wednesday, November 13, Plaintiffs' counsel did not call at the scheduled times, and was not available on Friday, November 14. Defendants' counsel will update the Court if the parties are able to reach an agreement on the above motion.

*Daniel M. Kavouras*
Daniel M. Kavouras
Counsel for Defendants

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO.: 3:25-CV-05825-JNW

15

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA  98104-4076
Telephone:  (206) 332-1380

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DATED:  November 14, 2025

**BAKER & HOSTETLER LLP**

*s/ Logan F. Peppin*
Logan F. Peppin, WSBA #55704
999 Third Avenue, Suite 3900
Seattle, WA 98104
Tel: (206) 332-1380
Email: lpeppin@bakerlaw.com

Daniel M. Kavouras (admitted *pro hac vice*)
Brittany N. Lockyer (admitted *pro hac vice*)
**BAKER & HOSTETLER LLP**
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Tel: (216) 861-7099
Emails: dkavouras@bakerlaw.com
          blockyer@bakerlaw.com

*Attorneys for Defendants Progressive Casualty Insurance Company and The Progressive Company*

I certify that this memorandum contains 4,405 words, in compliance with the Local Civil Rules.

---

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO.: 3:25-CV-05825-JNW

16

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA  98104-4076
Telephone:  (206) 332-1380

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on November 14, 2025, I electronically filed the foregoing with

3   the Clerk of the Court using the CM/ECF system and/or e-mailed to counsel below:

4

5   Dean Browning Webb, WSBA #10735
    5515 N.W. Pacific Rim Boulevard Apt. #103
6   Camas, Washington 98607
    Telephone: (360) 241-1656
7   E-mail: ricoman1968@ao1.com

8

9

                                               *s/Cheryl A. Phillips*
10                                             Cheryl Phillips, Legal Assistant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27